UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHERRY STEINER-SILVER** | ) Civ. No. |
| | ) |
| **Plaintiff,** | ) |
| | ) Jury Trial Demanded |
| v. | ) |
| | ) |
| **WINDJAMMER LANDING COMPANY LTD.** | ) |
| **d/b/a WINDJAMMER LANDING VILLA** | ) |
| **BEACH RESORT,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) JULY 3, 2012 |

## COMPLAINT

**PARTIES AND JURISDICTION:**

1. The plaintiff, Sherry Steiner-Silver resides at 8 Revonah Circle South, Stamford, Connecticut.

2. Defendant Windjammer Landing Company Ltd. d/b/a Windjammer Landing Villa Beach Resort ("WLC") is a corporation organized and existing under the laws of St. Lucia, with its principal place of business located at Labrelotte Bay, Castries, St. Lucia, West Indies.

3. Windjammer Landing Villa Beach Resort is a resort located in St. Lucia. Upon information and belief, Windjammer Landing Villa Beach Resort (the "Windjammer Landing") at all relevant times, was owned, operated, maintained, managed and controlled by WLC.

4. WLC advertises and markets extensively in the state of Connecticut in order to encourage and/or solicit Connecticut residents to utilize their facilities at the Windjammer Landing.

5. WLC produces a newsletter and other marketing materials promoting the Windjammer Landing which it distributes widely in Connecticut in order to encourage and/or solicit Connecticut residents to travel to the Windjammer Landing.

6. WLC advertises and market extensively in the state of Connecticut, through a variety of print media, such as magazines, pamphlets, and brochures-all of which are distributed to Connecticut residents through travel agencies and bookstores.

7. WLC promotes the Windjammer Landing through media advertising, direct marketing, direct sales, promotions and publicity including in Connecticut in order to encourage and/or solicit Connecticut residents to travel to the Windjammer Landing.

8. WLC supplements its sales effort through paid and unpaid exposure for the Windjammer Landing in trade and consumer media including USA TODAY, The Times and The Sunday Times, Conde Nast Traveler Magazine, Epicurious, Travel + Leisure, American Airlines, Traveling, BRIDES, Islands Magazine and other publications widely sold, distributed and read in Connecticut.

9. WLC solicited Connecticut residents through the Internet, by creating, purchasing, and maintaining an "interactive" web site which allows consumers in Connecticut to purchase services from their homes.

10. Personal jurisdiction is asserted pursuant to Conn. Gen. Stat. § 33-929(f)(2).

11. The jurisdiction of the court is asserted pursuant to 28 U.S.C. §1332 in that the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**FACTS COMMON TO ALL COUNTS:**

12. In November of 2010, Ms. Steiner-Silver searched on the internet, from her home in Connecticut, for a vacation destination.

13. Through JetBlue Airways Ms. Steiner-Silver located a vacation package for herself and her husband, Dr. Marc Silver, which included lodging at the Windjammer Landing and she then perused the Windjammer Landing website.

14. After viewing the Windjammer Landing website, on or about November 16, 2010, Ms. Steiner-Silver decided to book the vacation package at the Windjammer Landing, in part, based upon the representations made by the Windjammer Landing on its website.

15. On Thursday, December 2, 2010 Ms. Steiner-Silver and her husband departed from JFK airport in New York for St. Lucia and the Windjammer Landing.

16. They arrived at the Windjammer Landing on or about 5:00 pm on December 2, 2010 and checked into their villa at the resort.

17. At the Windjammer Landing there are various paved walkways that allow guests to travel from their villas to other parts of the resort, including to its pools, main area and restaurants.

18. The following morning, December 3, 2010, Dr. Silver walked from the villa where he and his wife were staying at the Windjammer Landing to the main area in the resort where breakfast was being served.

19. Shortly thereafter, at or about 9:40 a.m., Ms. Steiner-Silver left the villa with the intention of meeting her husband for breakfast in the main area of the resort.

20. Ms. Steiner-Silver was required to walk on a pedestrian walkway through the resort to get to the main area.

21. As Ms. Steiner-Silver walked on the walkway, a housekeeping van was traveling in reverse gear at a high rate of speed on the pedestrian walkway heading towards the back of Ms. Steiner-Silver.

22. Without warning the backing van crashed into the back of Ms. Steiner-Silver with great force striking her in the head, shoulder and hips and throwing her body forward and to the ground.

23. Ms. Steiner-Silver's body landed on the concrete walkway and, while laying on the ground, she began screaming for the van to stop as it continued reversing towards her.

24. Eventually the van stopped and a WLC housekeeping driver and housekeeper emerged from the van.

25. The driver of the housekeeping van was an agent and/or employee of WLC acting in the course and within the scope of his agency or employment.

26. On the morning of December 3, 2010, there were no signs posted warning guests of vehicles traveling at high speeds on the pedestrian walkways at the Windjammer Landing.

27. On the morning of December 3, 2010, there were no signs posted warning guests not to walk on the pedestrian walkways at the Windjammer Landing.

28. As a result of the collision, Ms. Steiner-Silver suffered injuries and conditions of a painful and permanent nature including but not limited to, a traumatic brain injury with cognitive-communication deficits, post concussive syndrome, headaches, numbness on the left side of her face, vision and hearing problems, cervical sprain/strain and muscle spasm, straightening of the normal cervical lordosis, back pain and left foot/ankle pain.

29. As a further result of the collision, Ms. Steiner-Silver has been compelled to expend money for medical care, therapy, medication and treatment. She will be required to spend further sums of money for these purposes in the future.

30. All the foregoing injuries have caused, and will continue to cause, Ms. Steiner-Silver pain and suffering, mental anxiety, discomfort, limitation of activities, loss of life's enjoyment, distress and disability, which will continue into the future.

**FIRST COUNT (NEGLIGENCE)**

31. The plaintiff repeats and realleges the allegations contained in paragraphs one through thirty as if set forth fully herein.

32. WLC's agent and/or employee that crashed the housekeeping van into Ms. Steiner-Silver negligently:

(a) drove his vehicle at an unreasonable rate of speed having regard to the conditions then and there existing;

(b) failed to exercise due care to avoid colliding with the plaintiff;

(c) was inattentive and failed to keep a proper and reasonable lookout for pedestrians;

(d) failed to observe plaintiff although by a reasonable exercise of his senses and faculties he was obligated to do so;

(e) failed to take reasonable care for the safety of others given the circumstances and conditions;

(f) failed to exercise due care to avoid crashing into plaintiff;

(g) failed to apply his brakes in time to avoid a collision, although by a proper and reasonable exercise of his senses and faculties he had the time and opportunity to do so;

(h) failed to keep his vehicle under proper and reasonable control; and

(i) failed to give a reasonable warning by sounding his vehicle's horn to avoid crashing into plaintiff.

33. As employer, WLC is liable for the negligent actions of its agent and/or employee that crashed the housekeeping van into Ms. Steiner-Silver.

34. As owner of the housekeeping van that was caused to crash into Ms. Steiner-Silver, WLC is liable to Ms. Steiner-Silver for the injuries she sustained in the crash.

35. WLC also had a duty to exercise due care and to operate and maintain its premises, activities and amenities in a reasonably safe condition for its guests, including Ms. Steiner-Silver.

36. WLC breached this duty in that it:

(a) failed to require its employees and/or agents to drive the housekeeping vans in a forward direction;

(b) failed to require its employees and/or agents to drive the housekeeping vans at a reasonable rate of speed;

(c) failed to adequately supervise its employees/and or agents;

(d) failed to adequately train its employees/and or agents;

(e) negligently retained the driver of the van that crashed into Ms. Steiner-Silver;

(f) failed to warn Ms. Steiner-Silver of the dangerous condition of the pedestrian walkways;

(g) created the dangerous condition existing on the pedestrian walkways;

(h) failed to ensure that the housekeeping vans were operated in a manner appropriate and safe for its guests;

(i) failed to create and/or enforce adequate policies governing the operation of the housekeeping vans; and

(j) failed under all of the circumstances then and there existing to exercise due care in the operation of its facility.

37. As a result of WLC's negligence, Ms. Steiner-Silver suffered injuries of a serious, painful and permanent nature as described above.

**SECOND COUNT:  (BREACH OF WARRANTY)**

38. The plaintiff repeats and realleges the allegations contained in paragraphs one through thirty-seven as if set forth fully herein.

39. WLC expressly and/or impliedly represented and warranted to Ms. Steiner-Silver that the Windjammer Landing and its appurtenant and affiliated facilities, including its pedestrian walkways, were maintained in an appropriate and safe manner for its guests.

40. WLC breached this express and/or implied warranty in that it:

(a) failed to require its employees and/or agents to drive the housekeeping vans in a forward direction;

(b)  failed to require its employees and/or agents to drive the housekeeping vans at a reasonable rate of speed;

(c) failed to adequately supervise its employees/and or agents;

(d) failed to adequately train its employees/and or agents;

(e) negligently retained the driver of the van that crashed into Ms. Steiner-Silver;

(f) failed to warn Ms. Steiner-Silver of the dangerous condition of the pedestrian walkway;

(g) created the dangerous condition existing on the pedestrian walkway;

(h) failed to ensure that the housekeeping vans were operated in a manner appropriate and safe for its guests;

(i) failed to create and/or enforce adequate policies governing the operation of the housekeeping vans; and

(j) failed under all of the circumstances then and there existing to exercise due care in the operation of its facility.

41. As a result of WLC's breach of warranty, Ms. Steiner-Silver suffered injuries of a serious, painful and permanent nature as described above.

WHEREFORE, the plaintiff prays for judgment as follows:

1. Compensatory and consequential damages;

2. Costs of suit; and

3. Such other relief as the Court deems just and proper.

>THE PLAINTIFF,
>SHERRY STEINER-SILVER
>
>By: /s/ Adam J. Blank
>    William Davoren (ct 12732)
>    Adam J. Blank (ct 26554)
>    WOFSEY, ROSEN, KWESKIN & KURIANSKY, LLP
>    600 Summer Street
>    Stamford, CT  06901
>    Tel.: 203-327-2300 / Fax:  203-967-9273
>    wdavoren@wrkk.com
>    ablank@wrkk.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHERRY STEINER-SILVER** | ) Civ. No. |
| | ) |
| **Plaintiff,** | ) |
| | ) Jury Trial Demanded |
| v. | ) |
| | ) |
| **WINDJAMMER LANDING COMPANY LTD.** | ) |
| **d/b/a WINDJAMMER LANDING VILLA** | ) |
| **BEACH RESORT,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) **JULY 3, 2012** |

## JURY DEMAND

The plaintiff demands a jury trial of all issues involved, now, or in the future, in this action.

>THE PLAINTIFF,
>SHERRY STEINER-SILVER
>
>
>By: /s/ Adam J. Blank
>    William Davoren (ct 12732)
>    Adam J. Blank (ct 26554)
>    WOFSEY, ROSEN, KWESKIN & KURIANSKY, LLP
>    600 Summer Street
>    Stamford, CT  06901
>    Tel.: 203-327-2300 / Fax:  203-967-9273
>    wdavoren@wrkk.com
>    ablank@wrkk.com